## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2018

Lyle W. Cayce
Clerk

No. 17-51023

JCB, INCORPORATED, doing business as Conveying & Power Transmission
Solutions,

Plaintiff - Appellant

v.

THE HORSBURGH & SCOTT COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HAYNES, HO, and DUNCAN, Circuit Judges.

JAMES C. HO, Circuit Judge:

The Texas Sales Representative Act seems straightforward enough:
When a sales representative is entitled to a sales commission, but the principal
refuses to pay, the sales representative can file suit and seek treble damages.
As the Act provides, a principal who fails to pay a commission is liable for
"three times the unpaid commission due the sales representative," as well as
for reasonable attorney's fees and costs.  TEX. BUS. & COM. CODE § 54.004.

Putting the Act into practice, however, presents questions that the plain
language of the Act does not appear to answer.  At what moment in time do we
determine the amount of any "unpaid commission due" that is subject to

No. 17-51023

trebling?  A number of options are possible, none of which appear to be compelled by the text.  Do we assess treble damages at the moment the commission is owed, if it is not paid immediately (or if it is not paid within some reasonable grace period—and if so, what grace period shall courts apply)?  Or do we treble based on any commissions owed at the time the suit is filed?  Or do we treble based on any commissions owed when the principal is held liable for unpaid commissions?  Or on yet some other date?  And does the Act award reasonable attorney's fees, regardless of whether treble damages are also awarded?

These questions of statutory interpretation are issues of first impression that will undoubtedly affect many Texas sales representatives and their principals.  They are questions that this court could answer today, to be sure.  But an answer from our court would only bind those future litigants whose disputes fall within the diversity jurisdiction of a federal court.  To best serve the people of Texas, these questions should be answered by the only court that can issue a precedential ruling that will benefit all future litigants, whether in state or federal court.  Accordingly, we certify two questions to the Supreme Court of Texas.

I.

Conveying & Power Transmission Solutions ("CPTS") agreed to act as an independent sales representative for the Horsburgh & Scott Company, responsible for marketing and securing sales of Horsburgh products.  In return, CPTS earned a commission on the orders it secured.  The agreement between the parties includes various provisions that govern the calculation and timing of commission payments (for example, commission payments are due "on approximately the 10th of each month following the payment of a commissionable order").

No. 17-51023

The parties later terminated the arrangement.  In their termination agreement, Horsburgh agreed that it would "pay commissions to CPTS in a manner consistent with the Agreement on sales from orders received by [Horsburgh] on or before May 24, 2015."  CPTS asserts that, pursuant to this provision, Horsburgh owed about $280,000 in commissions.

Over the approximately seventeen-month period that followed the termination, Horsburgh made consistent commission payments that were nevertheless indisputably untimely under the stated terms of their agreement.  Horsburgh admitted that it consciously paid CPTS late, in part because it prioritized other business expenses.  The record does not reflect the precise amounts that Horsburgh paid in an untimely fashion.  But the parties agree that (1) at least some commission payments were untimely, and (2) Horsburgh eventually paid all the commissions it owed, plus approximately 5% interest.

CPTS eventually sued in Texas state court for treble damages under the Act, as well as for breach of contract and quantum meruit.  Horsburgh removed to federal court under diversity jurisdiction.  After CPTS sued, Horsburgh paid between $77,000–$90,000 to cover the remaining outstanding commissions owed.  The district court subsequently granted summary judgment to Horsburgh, on the ground that Horsburgh no longer owed CPTS any unpaid commissions.  CPTS appeals only the portion of the district court judgment denying relief under the Act.

II.

The parties disagree on whether Horsburgh's late commission payments entitle CPTS to treble damages and attorney's fees.  The Act provides:

> A principal who fails to comply with a provision of a contract under Section 54.002 relating to payment of a commission . . . is liable to the sales representative in a civil action for:  (1) three times the unpaid commission due the sales representative; and (2) reasonable attorney's fees and costs.

3

No. 17-51023

TEX. BUS. & COM. CODE § 54.004.  Neither party disputes that the parties had a contract under § 54.002, and that Horsburgh violated a contractual provision "relat[ed] to a payment of a commission" by making untimely payments.  *Id.* § 54.004.

The issue here is whether there are any "unpaid commission[s] due." CPTS contends that it is entitled to treble damages on all untimely commission payments.  It further argues that CPTS may recover attorney's fees regardless of whether it recovers treble damages.  Horsburgh responds (and the district court agreed) that, once Horsburgh paid all commissions (and CPTS accepted those late payments), nothing was left "unpaid" or "due."  Horsburgh further asserts that, absent a treble damages award, CPTS was likewise not entitled to attorney's fees.

On its face, the statute plainly contemplates that the existence of unpaid commissions will result in treble damages.  The statute does not expressly state, however, which date the court should use to determine the existence and amount of any "unpaid commissions due," for purposes of trebling.  Do we treble any commission that was not paid immediately on the day it was due under the contract (or perhaps after some reasonable grace period had passed)? Do we treble any commission left unpaid on the day the suit is filed?  Do we treble any commission unpaid on the day the principal is held liable?  Or do we use some other day?

This case illustrates the significant difference that the answer to these questions can make.  If we were to treble every commission payment that was not paid immediately at the moment it was due, Horsburgh would be subject to treble damages based on $280,000 in unpaid commissions.  Alternatively, if we consider only what is due at the time CPTS filed suit, we would treble as much as $90,000 in commissions unpaid at that time.  Or we might look at the time of judgment, after Horsburgh had paid all outstanding commissions,

potentially leaving nothing to treble.  The plain text of the Act does not provide an answer.  Nor have we found meaningful guidance from any Texas precedent.

In addition, in the event that a plaintiff does not recover treble damages, the parties dispute whether a plaintiff can nevertheless seek reasonable attorney's fees.  In other statutory contexts, Texas courts have often concluded that a plaintiff must secure a damages award in order to additionally recover attorney's fees.  But those decisions typically rely on the text of the statute for guidance.  *See*, *e.g.*, *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) (attorney's fees "in addition to the amount of a valid claim"); *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002) (attorney's fees for "consumer[s] who prevail"); *Sw. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 55–56 (Tex. 1998) (attorney's fees for "prevailing parties").  It is not certain from those precedents how the Supreme Court of Texas might construe the Texas Sales Representative Act on the question of attorney's fees.

We have the discretion to certify questions of law to state courts of last resort.  *See*, *e.g.*, *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015).  On occasion, we have considered the following factors when deciding whether to certify:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir. 1998)).

Certification is advisable here.  First, as we have explained, the plain text of the statute does not appear to answer the timing questions presented

No. 17-51023

by this case.  Nor have the parties or this court been able to identify any meaningful authority from any Texas state court that might guide our interpretive efforts.  Second, the Texas Sales Representative Act governs the substantive rights and obligations of countless businesses and individuals across the state.  So Texas has an obvious interest in providing its citizens with a proper and uniform statewide interpretation of the Act, binding in both state and federal court, which only the Supreme Court of Texas can provide.  Finally, we have identified discrete issues for review, and the Supreme Court of Texas has promptly responded to our requests in the past.  Certification is accordingly appropriate.

III.

We hereby certify the following questions of law to the Supreme Court of Texas:

(1) What timing standard should courts use to determine the existence and amount of any "unpaid commissions due" under the treble damages provision of TEX. BUS. & COM. CODE § 54.004(1)?

(2) May a plaintiff recover reasonable attorney's fees and costs under TEX. BUS. & COM. CODE § 54.004(2), if the plaintiff does not receive a treble damages award under TEX. BUS. & COM. CODE § 54.004(1), and under what conditions?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certifie

No. 17-51023

STUART KYLE DUNCAN, Circuit Judge, concurring:

I concur in certifying interpretation of the Texas statute at issue to the Texas Supreme Court because only that court can authoritatively interpret it. *See, e.g., Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 183 (Tex. App.—Fort Worth 2004, pet. denied) (explaining that federal diversity decisions are "instructive" but "not binding as precedent on Texas state courts"). Unlike my colleagues, however, I find the statute amenable to a straightforward interpretation that I briefly set out below.

The statute in question provides for exemplary damages when a principal breaches a compensation agreement with a sales representative: the principal becomes liable for "three times the unpaid commission due the sales representative," as well as attorney's fees and costs. TEX. BUS. & COMM. CODE § 54.004(1), (2). In this case the principal concededly failed to pay commissions by the deadline in the parties' agreement, but eventually repaid all late commissions with interest (some after suit had been filed). The question is whether, in this scenario, the principal is still liable for "three times the unpaid commission due." The district court said "no," reasoning that the principal's eventual payment of the late commissions meant there were no longer any commissions left "unpaid"—*i.e.*, nothing still "due" and so nothing to treble. *JCB, Inc. v. Horsburgh & Scott Co.*, 2017 WL 6805045, at *5 (W.D. Tex. Oct. 25, 2017) (holding that "the commission is not 'unpaid' or 'due' because, as both parties agree, it has been paid with interest").

While declining to endorse the district court's reading of the statute, the majority reasons that the key phrase "unpaid commission due" in Section 54.004 leaves unanswered exactly *when* a commission becomes "due" for treble liability purposes. The majority suggests various possibilities—perhaps the relevant time is "at the moment the commission is owed," or "within some

7

No. 17-51023

reasonable grace period" afterwards, or "at the time the suit is filed," or "when the principal is held liable for unpaid commissions."

In my view, the text and structure of the statute provide the necessary answers to such timing questions. Naturally, Texas courts read statutory phrases, not in isolation, but in "the context and framework of the entire statute." *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2018); *see also, e.g., State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (statutory meaning is gleaned "from the entire act and not just from isolated portions"); *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (Texas courts "read the statute as a whole and interpret it to give effect to every part"); *see also, e.g., Occidental Chem. Corp. v. Elliott Turbomachinery Co.*, 84 F.3d 172, 175 (5th Cir. 1996) (our court must interpret a state statute "the way the [state] [s]upreme [c]ourt would interpret the statute") (brackets added). Thus, a Texas court would interpret the phrase "unpaid commission due" by reading it in context and within the surrounding statutory framework. Those contextual and structural clues show what the phrase means.

Notably, Section 54.004 makes treble liability turn on the operation of two *other* sections. A principal is liable for "three times the unpaid commission due" the sales representative only if the principal (1) "fails to comply with a provision of a contract under Section 54.002 relating to payment of a commission," or (2) "fails to pay a commission as required by Section 54.003." TEX. BUS. & COMM. CODE § 54.004. The cross-referenced sections address two distinct scenarios. Section 54.002 mandates that a compensation agreement be "in writing or in a computer-based medium," that it "state the method by which the sales representative's commission is to be computed and paid," and that a copy be given the representative. *Id.* §§ 54.002(a)(1), (a)(2), (b). By contrast, Section 54.003 concerns agreements that do *not* comply with the section 54.002 requirements and provides that, if such an agreement is terminated, "the

principal shall pay all commissions due the sales representative not later than the 30th working day after the date of the termination." *Id.* § 54.003.

The interplay of these linked sections illustrates what "unpaid commission due" means in Section 54.004.

First, take a principal's breach under Section 54.002. In that scenario, Section 54.004 links treble liability for "the unpaid commission due" to the principal's "fail[ure] to comply with *a provision* of a contract … *relating to payment of a commission*." *Id.* § 54.004 (emphasis added). And Section 54.002 tells us that the contract must contain "the method by which the sales representative's commission is to be … paid." *Id.* § 54.002(a)(2). So, connecting the dots between Sections 54.004 and 54.002, it appears that a commission becomes "due" precisely when the relevant "provision" in the parties' contract *makes* it due. That is just how the statute would work here: the parties' compensation agreement sets the commission deadline "on approximately the 10th of each month following the payment of a commissionable order," and so the principal would be liable for three times any commission unpaid by that agreed-upon deadline.[1]

Second, take a principal's breach under Section 54.003. (This is the section concerning agreements that do not comply with the Section 54.002 requirements.) In this scenario, Section 54.004 makes treble liability turn on a principal's failure to pay a commission "as required by Section 54.003." And Section 54.003 spells out that "all commissions due" are to be paid "not later than the 30th working day after the date of termination." *Id.* § 54.003. So, connecting the dots between Sections 54.004 and 54.003, it appears that an

---

[1] I recognize that doubts could arise in this case over whether a particular commission were late, given that the deadline is "*approximately* the 10th of each month." Presumably such an issue would be determined by the trier of fact.

unpaid commission would be "due" for treble liability purposes no more than 30 working days after termination. In that situation, even if a principal paid all outstanding commissions on the *31st* working day after termination, the principal would still be liable—by the statute's plain terms—for triple the "unpaid commissions" that had been "due" the day before.

To sum up: the two sections cross-referenced by Section 54.004 combine to give content to the phrase "unpaid commission due" that varies depending on the scenario presented. If there is a Section 54.002 breach of a provision stating when commissions are to be paid, then it is the parties' agreement that determines when an "unpaid commission" is "due." That is the scenario presented here. On the other hand, if there is a Section 54.003 failure to abide by the statutory 30-day time-limit, then the statute itself determines when an "unpaid commission" is "due." Read this way, the two sections are complementary: Section 54.003 addresses a scenario where the parties' agreement—unlike one compliant with Section 54.002—fails to specify the "method by which the sale representative's commission is to be … paid," and thus provides a one-size-fits-all answer to the question of when an unpaid commission is "due" for treble liability purposes. In either case, the statutory text and structure establish an objective benchmark for determining the timing (and hence the measure) of treble damages under Section 54.004.

One might object that this interpretation will lead to harsh results. After all, it would mean that a principal becomes triply liable for a commission paid even one day after the agreed-upon deadline (or, alternatively, one day after the statutory 30-day period, if it applies). There are several responses. First, that result may not seem so harsh if you are a sales representative dependent on commissions for your livelihood. You would welcome the statute's rigor because it would encourage principals to pay on time the money they owe you (money they already have in their pockets thanks to your efforts). Second, this

strict result is consistent with other states' sales representative acts. *See, e.g.,* GA. CODE § 10-1-702(b)(1), (2) (providing recovery as exemplary damages for "double the amount not timely paid as required"); MICH. COMP. LAWS § 600.2961(5)(b) ("[i]f the principal is found to have intentionally failed to pay the commission when due," awarding as exemplary damages "an amount equal to 2 times the amount of commissions due but not paid as required"). Third, if the Texas Legislature wished to write a more lenient provision, it knew how. *See, e.g.,* TEX. BUS. & COMM. CODE § 17.50(b)(1) (allowing consumer to recover treble damages for certain deceptive trade practices if "the conduct was committed intentionally"). Finally, how "harsh" a provision ought to be—especially a provision so evidently punitive as this one—is a policy judgment left up to representative political bodies.[2] We judges, by contrast, "must take statutes as we find them[.]" *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010); *see also, e.g., Turner v. Cross*, 18 S.W. 578, 579 (Tex. 1892) (explaining that "the only safe rule is to apply to [words] their ordinary meaning … and if, so applying them, the legislation in which they are found seems to be harsh, the courts are not authorized to place on them a forced construction for the purposes of mitigating a seeming hardship") (cleaned up).[3]

---

[2] This is not one of the narrow category of civil cases calling for application of the rule of lenity. *See, e.g., United States v. Thompson/Ctr. Arms Co.,* 504 U.S. 505, 518 (1992) (observing that rule of lenity applies to civil cases when civil law at issue is incorporated into a criminal statute or when a criminal statute is invoked in a civil action).

[3] To be clear, I also concur in the majority's decision to certify the question whether a plaintiff may recover fees and costs under Section 54.004(2) if he does not receive treble damages under Section 54.004(1). The majority observes that Texas courts "typically rely on the text of the statute for guidance" on such questions. But that undoubtedly correct statement of law makes answering the certified question easy: Section 54.004 contains no indication that it makes recovering fees *dependent* on recovering treble damages. Rather, the text makes recovering fees contingent *only* on the principal's breach of a contractual provision relating to commission payments under Section 54.002, or on the principal's failure to pay a commission as required by Section 54.003.

11

No. 17-51023

I respectfully concur.

No. 17-51023

JAMES C. HO, Circuit Judge, concurring:

I write separately to respond to Judge Duncan's concurring opinion.

The court today certifies certain issues to the Supreme Court of Texas to determine at what moment in time courts should identify the "unpaid commission due," and therefore subject to treble damages, under TEX. BUS. & COM. CODE § 54.004. Judge Duncan agrees with the decision to certify. But he writes separately because he also concludes that the text of the provisions in question makes the decision straightforward for the Supreme Court of Texas.

Judge Duncan and I emphatically agree that the proper function of the judiciary is to construe statutory texts faithfully and according to their plain meaning—to say what the law is, not what we may personally think the law should be. We nevertheless reach different conclusions as to the particular text before us, as textualists sometimes do. He concludes that the provisions in question allow only one permissible interpretation. By contrast, I conclude that the provisions before us are capable of competing plausible interpretations among reasonable jurists of good faith. And it is for that reason that I concur in the decision to certify issues to the Supreme Court of Texas.

I.

Judge Duncan is plainly correct that § 54.002 and § 54.003 fix the time at which a principal may become liable for a sales commission. But the dispute in this case concerns damages, not liability. And it is not clear to me what exactly in these liability provisions speaks to the timing that courts must use to determine damages under § 54.004. The liability and damages provisions perform distinct functions, and I do not see what in the text of the former sheds light on the interpretative question before us concerning the latter.

Judge Duncan theorizes that § 54.004's reference to § 54.002 and § 54.003 requires courts to calculate the amount of any "unpaid commission

13

due" at the time of violation—and not at the time of suit, or judgment, or some other moment.  *See* TEX. BUS. & COM. CODE § 54.002(a)(2) (requiring written contracts to "state the method by which the sales representative's commission is to be computed and paid"); *id.* § 54.003 (providing that, for agreements that do not comply with § 54.002, "the principal shall pay all commissions due the sales representative not later than the 30th working day after the date of the termination").

But there is nothing in § 54.002 and § 54.003 that compels courts to treble what is due at time of violation.  If there were, we might expect, for example, that altering the text of § 54.004 would create problems.  Either the statute would point in different directions, or we would have concerns about surplusage.  But that is not true here.  Suppose the Legislature had specified in § 54.004 that courts should impose treble damages based on any "unpaid commission due at the time the civil action is filed."  Such language would not create any conflict or tension with anything in § 54.002 or § 54.003.  Or suppose the Legislature had made explicit what Judge Duncan submits is implicit, and specified in § 54.004 that courts should treble any "unpaid commission due but unpaid by the deadline specified in § 54.002 or § 54.003."  This too would create no conflict or tension or surplusage with the language of § 54.002 and § 54.003.

So it would appear that nothing in the text of § 54.002 and § 54.003 forecloses or demands the application of § 54.004 at any particular time.

## II.

There are additional reasons why I am not prepared at this time to embrace the interpretation offered by the concurring opinion.

In other contexts, courts typically do not treat damages as fixed at the moment of liability, but instead recognize that damages can increase or decrease over time.  Contract damages can decrease if opportunities to mitigate subsequently arise, and tort damages can decrease if the extent of injury is not

what it seemed at the time of liability. *See, e.g., Pulaski Bank & Tr. Co. v. Texas Am. Bank*, 759 S.W.2d 723, 736 (Tex. App.—Dallas 1988, writ denied) (diminishing damages award by the amount attributed to a failure to mitigate); RESTATEMENT (SECOND) OF TORTS § 910 cmt. b (AM. LAW INST. 1979) ("[A]n event that indicates that the conduct is less harmful than had been supposed prevents or diminishes damages for the consequences.").

Similarly, tort damages can increase if a personal injury worsens. *See, e.g., J. Weingarten, Inc. v. Carlisle*, 172 S.W.2d 170, 174 (Tex. Civ. App.—Galveston 1943, writ ref'd w.o.m.) (defendant liable not only for initial injury but resulting infection); 28 TEX. JUR. 3D DAMAGES § 115 ("[A] plaintiff may recover *for all damages suffered up to the time of the trial* and for those that are shown as reasonably and probably certain to be suffered in the future.") (emphasis added); RESTATEMENT (SECOND) OF TORTS § 910 cmts. b, c ("Any event occurring prior to the trial that increases the harmful consequences of the defendant's tortious conduct, if it is an event for the consequences of which the defendant is responsible, increases the damages recoverable to the same extent, whether the event has occurred before suit is brought or after suit.").

So a Texas court might reasonably conclude that, absent statutory text to the contrary, the Legislature would expect courts to construe and apply the damages provision of § 54.004 in a similarly dynamic fashion—rather than freeze the damages analysis at the time of the violation.

In addition, the Texas Legislature has directed courts to consider the consequences of a proposed statutory interpretation. So suppose, for example, that a principal owed a $1 million commission, and paid one day late, plus interest. Under this hypothetical, the agent does not suffer any "actual damages." Yet the agent would nevertheless be entitled to a $2 million windfall. If the plain meaning of the statutory text were clear, that would be one thing. *See, e.g., BankDirect Capital Fin., LLC v. Plasma Fab, LLC, 519*

No. 17-51023

*S.W.3d 76, 85 (Tex. 2017) ("Statutes that impose timelines naturally burden those who miss them.").* But the provision before us is not so clear, to me anyway. A Texas court, in the face of an ambiguous statute, might conclude that the "consequences of a particular construction" make it less plausible than the alternative. TEX. GOV'T CODE § 311.023(5).

Finally, Texas courts might also consider how best to construe § 54.004 in light of TEX. CIV. PRAC. & REM. CODE § 41.004(a), which provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded."

\* \* \*

If this were a federal statute, then it would fall upon us to decide which among competing plausible interpretations is the correct one. But this case involves a Texas statute—one that is capable of multiple plausible constructions, and affects countless individuals and businesses across the state. Accordingly, the court has decided to certify these issues to the only court that can speak with authority for all Texans, in state and federal court alike. Certification will have the additional benefit of giving counsel the opportunity to address the issues identified in these two concurring opinions, but not examined by either party in this case to date.

I do not presume to know how Texas courts would ultimately resolve these contested issues of statutory interpretation. And I do not intend anything in this opinion to signal any personal view as to how Texas courts ought to decide these matters. My point is precisely the opposite: Under our system of federalism, it is for Texas courts to decide unsettled questions of Texas law. I concur in the decision to certify these issues to the Supreme Court of Texas.

**A True Copy**
**Certified Nov 13, 2018**

*Jyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**